IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS N. NGUYEN,                          3:14-cv-00413-BR

        Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

        Defendant.


**SARA L. GABIN**
14523 Westlake Drive
Lake Oswego, OR 97035
(503) 620-3171

        Attorney for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1044


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**THOMAS M. ELLSBERRY**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2112

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Nicholas N. Nguyen seeks judicial review of a
final decision of the Commissioner of the Social Security
Administration (SSA) in which she denied Plaintiff's application
for Disability Insurance Benefits (DIB) under Title II of the Act
and Supplemental Security Income (SSI) under Title XVI of the
Act.  On January 29, 2015, the Commissioner responded by filing a
Motion (#17) to Remand for further administrative proceedings.

    This Court has jurisdiction to review the Commissioner's
decision pursuant to 42 U.S.C. § 405(g).  Following a thorough
review of the record, the Court **REVERSES** the final decision of
the Commissioner, **GRANTS in part** and **DENIES in part** the
Commissioner's Motion to Remand, and **REMANDS** this case for an
immediate award of benefits.


<u>**ADMINISTRATIVE HISTORY**</u>

    Plaintiff filed his applications for DIB and SSI on July 10,


2 - OPINION AND ORDER

2007.  Tr. 395.[1]  His applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 6, 2009.  Tr. 74.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.  Tr. 74.

The ALJ issued a decision on March 12, 2010, in which he found Plaintiff is not entitled to benefits.  Tr. 130.  The Appeals Council, however, issued an order on December 30, 2011, in which it reversed the ALJ's decision, remanded the case to the ALJ, and ordered the ALJ to conduct a "supplemental hearing" and to issue a new decision.  Tr. 140-43.

Accordingly, on May 15, 2012, the ALJ held a second hearing. Tr. 40.  At the hearing Plaintiff was represented by an attorney. Plaintiff; Donna Taxon, M.A., one of Plaintiff's mental-health treatment providers; and a VE testified at the hearing.  Tr. 40.

The ALJ issued a decision on June 15, 2012, in which he again found Plaintiff is not entitled to benefits.  Tr. 32.  That decision became the final decision of the Commissioner on January 31, 2014, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

---

[1] Citations to the official transcript of record filed by the Commissioner on August 21, 2014, are referred to as "Tr."

## BACKGROUND

Plaintiff was born on April 27, 1965; was 47 years old on the date of the most recent hearing; and has a high-school diploma with two years of college.  Tr. 395, 406.  Plaintiff has prior relevant work experience as a cook and "cook's helper." Tr. 31.

Plaintiff alleges disability since June 9, 2007, due to anxiety, depression, and bipolar disorder.  Tr. 395, 399.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 23-30.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d

881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161
(9th Cir. 2012).  Substantial evidence is "relevant evidence that
a reasonable mind might accept as adequate to support a
conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It
is "more than a mere scintilla" of evidence but less than a
preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the

Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser,* 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§ 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis when the ALJ is determining whether a claimant can still
work despite severe medical impairments.  An improper evaluation
of the claimant's ability to perform specific work-related
functions "could make the difference between a finding of
'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.   20 C.F.R. § 416.920(a)(4)(iv).
*See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.   20 C.F.R. § 416.920(a)(4)(v).   *See also
Keyser,* 648 F.3d at 724-25.   Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.   *Lockwood v.
Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.   If the Commissioner meets this burden, the claimant
is not disabled.   20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since June 9, 2007, his alleged
onset date.   Tr. 23.

At Step Two the ALJ found Plaintiff has the severe
impairments of bipolar disorder, social anxiety, and alcohol
dependence.   Tr. 23-24.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 17-18.  In his RFC assessment the ALJ found although Plaintiff has the functional capacity to perform a full range of work at all exertional levels, he is limited to performing unskilled work that involves "simple, unrushed tasks"; does not require interaction with the public; only involves superficial interaction with others, which the ALJ defined as "occasional, brief interaction for work-related purposes involving no close cooperation or coordination"; and does not involve any exposure to hazards.  Tr. 25-30.

At Step Four the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 31.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as an agricultural-produce sorter and can-filling-and-closing machine tender.  Tr. 31-32.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 32.


## **DISCUSSION**

Plaintiff contends the ALJ erred when he (1) failed to provide sufficient reasons for rejecting Plaintiff's testimony and (2) erroneously rejected the opinions of Gayle K. Ely, M.D.; Katie Ugolini, Ph.D.; Alie Thompson, P.M.H.N.P.; and mental-

health provider (MHP) Donna Taxon.  As a result of these errors,
Plaintiff contends the Court should reverse the ALJ's decision
and remand this matter to the Commissioner for the immediate
calculation and award of benefits.

Defendant, in turn, contends the ALJ provided legally
sufficient reasons for discrediting the medical testimony of
Dr. Ely, Dr. Ugolini, PMHNP Thompson, and MHP Taxon.  Defendant,
however, concedes the ALJ erred in rejecting Plaintiff's
testimony and agrees the ALJ's opinion must be reversed as to
that issue.  Defendant, therefore, requests the Court to remand
this matter for further administrative proceedings.[2]

## I.    Medical Testimony

The parties' only substantive dispute is whether the ALJ
properly weighed the medical-source testimony.

### A.    Standards

Medical sources are divided into two categories:
"acceptable medical sources" and "other sources."  20 C.F.R.
§§ 404.1513, 416.913.  Acceptable medical sources include
licensed physicians and psychologists.  20 C.F.R. §§ 404.1513(a),
416.913(a).  Medical sources classified as "other sources"
include, but are not limited to, nurse practitioners, therapists,
licensed clinical social workers, and chiropractors.  20 C.F.R.

---

[2] Because the parties agree the ALJ erred in rejecting
Plaintiff's testimony, the Court need not directly address that
issue in this Opinion and Order.

§§ 404.1513(d), 416.913(d).

### 1.   Acceptable Medical Sources

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Taylor v. Comm'r of Soc. Sec.,* 659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 821, 830-31 (9th Cir. 2010)(quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue*, 471 F. App'x 674, 676 (9th Cir. 2012)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. *See also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831).  When a nonexamining physician's opinion contradicts an examining

physician's opinion and the ALJ gives greater weight to the
nonexamining physician's opinion, the ALJ must articulate her
reasons for doing so with specific and legitimate reasons
supported by substantial evidence. *See, e.g.*, *Ryan v. Comm'r of
Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

### 2.   Other Sources

With respect to "other sources," the Social Security
Administration notes:

> With the growth of managed health care in recent
> years and the emphasis on containing medical
> costs, medical sources who are not acceptable
> medical sources, such as nurse practitioners,
> physician assistants, and licensed clinical social
> workers, have increasingly assumed a greater
> percentage of the treatment and evaluation
> functions previously handled primarily by
> physicians and psychologists.  Opinions from these
> medical sources, who are not technically deemed
> acceptable medical sources under our rules, are
> important and should be evaluated on key issues
> such as impairment severity and functional
> effects, along with the other relevant evidence in
> the file.

*SSR* 06-03p, at *3.  Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include the length of time the source has known the
claimant, the number of times and frequency that the source has
seen the claimant, the consistency of the source's opinion with
other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise.  SSR 06-03p, at *4.  On

the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source.  SSR 06-
03p, at *5-6.

The ALJ, however, must explain the weight assigned to such
sources to the extent that a claimant or subsequent reviewer may
follow the ALJ's reasoning.  SSR 06-03p, at *6.  "The ALJ may
discount testimony from . . . 'other sources' if the ALJ 'gives
reasons germane to each witness for doing so.'"  *Molina*, 674 F.3d
at 1111 (quoting *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d
1217, 1224 (9th Cir. 2010)).

**B.   Analysis**

As noted, Plaintiff contends the ALJ failed to provide
sufficient reasons for rejecting the opinions of Dr. Ely,
Dr. Ugolini, PMHNP Thompson, and MHP Taxon.

**1.   Dr. Ely's Opinion**

Dr. Ely was Plaintiff's treating psychiatrist between
October 26, 2006, and September 20, 2007.  Tr. 576.  Dr. Ely
diagnosed Plaintiff with bipolar disorder, social phobia, and
alcohol dependence.  Tr. 582.  Dr. Ely reported Plaintiff
suffered from depression and mania, which caused Plaintiff to
experience variably reduced or excessive sleep, feelings of
grandiosity, irritability, and depression.  Tr. 576.  Dr. Ely
stated Plaintiff was capable of "adequate" activities of daily

living and social functioning when he was stable and on
medication, but Dr. Ely noted Plaintiff "has not been entirely
responsive to medication." Tr. 577. Dr. Ely reported all of
Plaintiff's functional capabilities are "at risk" when Plaintiff
is not getting an adequate response to medication or when he is
not participating in therapy. Tr. 578. Dr. Ely assigned
Plaintiff a Global Assessment of Functioning (GAF) scale score of
40.[3] Finally, Dr. Ely concluded Plaintiff is expected to have
"chronic mental health problems." Tr. 578.

    The ALJ partially discounted Dr. Ely's opinions in
favor of the nonexamining opinions of Peter LeBray, Ph.D., and
Bill Hennings, Ph.D. Tr. 599-601, 608. Accordingly, the ALJ was
required to provide specific and legitimate reasons supported by
substantial evidence in the record for discounting Dr. Ely's
opinion. *See Ryan*, 528 F.3d at 1198.

    The ALJ gave Dr. Ely's opinions only "moderate weight

---

[3] Although the Fifth Edition of the *Diagnostic and
Statistical Manual of Mental Disorders* issued May 27, 2013,
abandoned the GAF scale in favor of standardized assessments for
symptom severity, diagnostic severity, and disability (see
*Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V)
16 (5th ed. 2013)), at the time of Plaintiff's assessment and the
ALJ's opinion the GAF scale was used to report a clinician's
judgment of the patient's overall level of functioning on a scale
of 1 to 100 (see *Diagnostic and Statistical Manual of Mental
Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)). In the fourth
edition, a GAF of 31-40 indicated some impairment in reality
testing or communication or major impairment in several areas,
such as work or school, family relations, judgment, thinking, or
mood.

to the extent that they confirm the claimant's condition can be adequately controlled when he complies with his medical regimen." The ALJ found Dr. Ely's opinions lacked detail, her opinions were inconsistent with her findings that Plaintiff's mental status was within normal limits during clinical examinations, and her assessment of Plaintiff's GAF score was inconsistent with other GAF scores in the record.  Tr. 28.

As an initial matter, the ALJ mischaracterized Dr. Ely's opinion.  Although the ALJ suggested in his opinion that Dr. Ely found Plaintiff's compliance with medical treatment was the only factor that placed Plaintiff's functioning at risk, Dr. Ely merely stated Plaintiff's functioning was at risk if he "does not get *adequate response* to medication *or* participate in all recommended treatments."  Tr. 578 (emphasis added).  Even though the record reflects there were instances of alcohol relapses and medication cessations that caused acute exacerbations in Plaintiff's functioning, there are also numerous references to Plaintiff's mental-health instability caused by his inadequate response to treatment even when he was compliant.

The ALJ's other reasons for rejecting Dr. Ely's opinions were also insufficiently supported by evidence in the record.  The record reflects Dr. Ely's opinion is neither inconsistent with her observations in clinical examinations nor lacking in detail.  Moreover, the mere fact that Dr. Ely assigned

15 - OPINION AND ORDER

a lower GAF score than another treatment provider is not sufficient to reject Dr. Ely's assessment, especially in light of Dr. Ely's treatment of Plaintiff over an extended period.

On this record, therefore, the Court concludes the ALJ erred when he discounted Dr. Ely's opinion because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2. Dr. Ugolini's Opinion

On November 16, 2009, Dr. Ugolini conducted a neuropsychological screening examination of Plaintiff.  In addition to preparing a ten-page report, Dr. Ugolini filled out a form detailing Plaintiff's work-related functional limitations. Dr. Ugolini opined Plaintiff has mild limitations in his ability to understand, remember, and carry out simple instructions; moderate deficits in his ability to understand, remember, and carry out complex instructions as well as make judgments on simple work-related decisions; and a marked impairment in his ability to make judgments on complex work-related decisions. Tr. 698.  Dr. Ugolini also opined Plaintiff has marked limitations in his ability to interact with the public, co-workers, and supervisors.  Tr. 699.  In addition, Dr. Ugolini reported Plaintiff has a moderate limitation in his ability to respond to usual work situations and to changes in a routine work setting.  Tr. 699.

16 - OPINION AND ORDER

The ALJ partially rejected Dr. Ugolini's opinion as to Plaintiff's ability to interact with the public, co-workers, and supervisors on the ground that Plaintiff's activities of daily living suggest he can have such interactions on a superficial, occasional basis.  The ALJ specifically referenced a report that Plaintiff assisted his son's soccer team and volunteered at his son's school as evidence of inconsistency between Plaintiff's daily activities and Dr. Ugolini's opinion as to Plaintiff's social-interaction limitations.  *See* Tr. 987.  Dr. Ugolini's opinion as to Plaintiff's social-interaction limitations was contradicted by the opinions of the nonexamining medical sources. The ALJ, therefore, was required to provide specific and legitimate reasons supported by substantial record evidence for discounting Dr. Ugolini's opinion.  *See Ryan*, 528 F.3d at 1198.

The record does not indicate Plaintiff regularly volunteered with his son's school or soccer team.  In any event, even if Plaintiff rarely or occasionally engaged in such activities, such activities do not undermine Dr. Ugolini's opinion that Plaintiff's ability to socially interact is limited considering the highly variable nature of the symptoms of bipolar disorder.  Thus, inconsistency with Plaintiff's activities of daily living as reflected in the record is not a sufficient reason to discount Dr. Ugolini's opinion.

On this record, therefore, the Court concludes the ALJ

17 - OPINION AND ORDER

erred when he discounted Dr. Ugolini's opinion because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 3.    PMHNP Thompson's Opinions

On April 6, 2009, PMHNP Thompson submitted an opinion listing Plaintiff's diagnoses and outlining Plaintiff's symptoms and limitations.  PMHNP Thompson reported Plaintiff had been diagnosed with bipolar disorder, attention-deficit hyperactive disorder (ADHD), and alcohol abuse.  Tr. 246.  PMHNP Thompson explained Plaintiff's symptoms fluctuated depending on the episode, but they included irritability, fatigue, sleep disturbance, problems with concentration and memory, depression, and manic behaviors such as grandiosity, distractibility, and impulsiveness.  Tr. 246.  PMHNP Thompson reported Plaintiff's ability to maintain concentration, persistence, and pace in the workplace would not have "predictable outcomes," but Plaintiff could not be expected to do so throughout a normal work day in a normal work week.  Tr. 247.  PMHNP Thompson indicated Plaintiff's symptoms "persist independently of substance abuse issues, however they will exacerbate with substance use."  Tr. 247.

With her narrative opinion PMHNP Thompson submitted a form opinion regarding Plaintiff's functional limitations.  PMHNP Thompson primarily reported Plaintiff would have mild and moderate limitations with regard to understanding and memory,

18 - OPINION AND ORDER

sustained concentration and persistence, social interaction, and
adaptation.  Tr. 683-85.  Consistent with her narrative opinion,
however, PMHNP Thompson reported Plaintiff would have marked
limitations in his ability to "perform activities within a
schedule, maintain regular attendance and be punctual within
customary tolerances," and to "complete a normal workday and
workweek without interruptions from psychologically based
symptoms."  Tr. 684.

        The ALJ was required to cite reasons germane to PMHNP
Thompson as an "other source" in order to discredit her opinion.
*Molina*, 674 F.3d at 1111.  The ALJ rejected PMHNP Thompson's
opinion because PMHNP Thompson "saw the claimant only three
times," and the ALJ found her opinions were brief, conclusory,
and inconsistent with her chart notes.  Tr. 29.

        Contrary to the ALJ's assertion, there are more than a
dozen chart notes in the record from Plaintiff's appointments
with PMHNP Thompson.  Those chart notes generally indicate
Plaintiff experiences the range of symptoms that PMHNP Thompson
described in her narrative opinion and on which she based her
assessment of Plaintiff's functional capacity.  As to the ALJ's
second reason for rejecting PMHNP Thompson's opinion, the ALJ's
finding that PMHNP Thompson's opinions were brief and conclusory
is without merit.

        Accordingly, on this record the Court concludes the ALJ

erred when he failed to provide legally sufficient reasons germane to PMHNP Thompson's opinion for rejecting her opinion.

    **4.   MHP Taxon's Opinions**

MHP Taxon, one of Plaintiff's mental-heath treatment providers, submitted an opinion on November 25, 2011, and testified at the May 2012 hearing.

In her November 2011 opinion MHP Taxon reported Plaintiff's diagnoses are bipolar disorder and ADHD.  MHP Taxon listed largely the same manic and depressive symptoms as PMHNP Thompson.  Tr. 1099.  MHP Taxon reported Plaintiff had a moderate impairment in his ability to stay on task, and the longest period that Plaintiff can stay focused on a task is 20-to-30 minutes. Tr. 1101.  MHP Taxon also reported Plaintiff would "not be able to sustain a repetitive task for an extended period" and would have difficulty following through on even simple instructions. Tr. 1101-02.  MHP Taxon stated Plaintiff is markedly impaired in his ability to interact with co-workers and supervisors because he would "process criticism as a personal attack" and exhibit paranoia to the extent that he would believe "his co-workers were talking behind his back."  Tr. 1103.

At the hearing MHP Taxon testified she had appointments with Plaintiff at least every other week, and she listed the same diagnoses and symptoms as in her opinion.  Tr. 45-48.  MHP Taxon said Plaintiff would not be able to leave his house when

20 - OPINION AND ORDER

depressed.  She also testified Plaintiff, when functioning well,
was able to spend "a little time" with his son and to pick his
son up from school.  Tr. 48-49.  MHP Taxon testified she did not
believe Plaintiff would be able to maintain consistent
concentration, persistence, and pace in a normal work week
because of his mood instability and focus problems.  Tr. 49-50.

       The ALJ was required to provide reasons germane to MHP
Taxon to reject her testimony as an "other source."  *See Molina*,
674 F.3d at 1111.  The ALJ rejected MHP Taxon's testimony on the
ground that it was inconsistent with the treatment record and
Plaintiff's activities of daily living.  Tr. 30.

       After a thorough review of the record, however, the
Court concludes MHP Taxon's testimony is not materially
inconsistent with Plaintiff's activities of daily living and his
treatment record.  As noted, reports of occasional activities
like gardening, practicing soccer, or caring for children are not
inconsistent with limitations resulting from bipolar disorder.

       Accordingly, on this record the Court concludes the ALJ
erred when he failed to provide legally sufficient reasons
germane to MHP Taxon's opinion for rejecting her opinion.

**II.  Remand**

    The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000).  The

21 - OPINION AND ORDER

issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Act.  *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

*Id.*  The reviewing court should decline to credit testimony when "outstanding issues" remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).  When the reviewing court finds the elements of the "credit-as-true" rule have been satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled."  *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

As noted, the ALJ erred when he rejected Plaintiff's

testimony and discounted the medical opinions of Dr. Ely, Dr.
Ugolini, PMHNP Thompson, and MHP Taxon.  The Court finds if the
ALJ had credited the erroneously rejected evidence, he would be
required to find Plaintiff disabled.  After a thorough review,
the Court concludes the record as a whole does not create
"serious doubt that the claimant is, in fact, disabled."  *See
Garrison*, 759 F.3d at 1021.

Accordingly, on this record the Court concludes the decision
of the Commissioner must be reversed, the Commissioner's Motion
to Remand is denied to the extent that the Commissioner requests
this matter to be remanded for further administrative
proceedings, and this case is remanded for the immediate
calculation and award of benefits.


## CONCLUSION

For these reasons, the Court **REVERSES** the ALJ's decision,
**GRANTS in part** and **DENIES in part** the Commissioner's Motion (#17)
to Remand, and **REMANDS** this matter to the Commissioner pursuant

to sentence four of 42 U.S.C. § 405(g) for the immediate
calculation and award of benefits.

IT IS SO ORDERED.

DATED this 6th day of March, 2015.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge